FILED
2014 Oct-08 PM 01:48
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA SOUTHERN DIVISION**

| | |
|---|---|
| **LOCAL 703, I.B. OF T. GROCERY AND FOOD EMPLOYEES WELFARE FUND, et al., Individually and on Behalf of All Others Similarly Situated,** | **CLASS ACTION** |
| **Plaintiffs,** | **CIVIL ACTION NUMBER 2:10-cv-02847-IPJ** |
| **vs.** | |
| **REGIONS FINANCIAL CORPORATION, et al.,** | |
| **Defendants.** | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THE DENIAL OF CLASS CERTIFICATION BASED ON DEFENDANTS' REBUTTAL OF THE FRAUD-ON-THE-MARKET PRESUMPTION**

Defendants Regions Financial Corporation, C. Dowd Ritter, Irene M. Esteves and Alton E. Yother ("Defendants") respectfully submit this memorandum of law in support of the denial of class certification based on Defendants' successful rebuttal of the fraud-on-the-market presumption. Defendants present evidence of no statistically significant price increase on the dates of the alleged misrepresentations caused by the alleged misrepresentations. Significantly, even if the alleged misrepresentations were merely confirmatory as Plaintiffs now argue,

Defendants also present evidence that there was no statistically significant price decrease on the alleged corrective disclosure dates. Thus, Defendants have successfully rebutted the fraud-on-the-market presumption with evidence that "the asserted misrepresentations (or its correction) did not affect the market price of the defendant's stock." Halliburton Co. v. Erica P. John Fund, Inc., 134 S. Ct. 2398, 2414 (2014) ("Halliburton II"). Such rebuttal defeats class certification. Id.

## I. Under Halliburton II, this Court Must Consider Whether Evidence of "No Price Impact" Rebuts the Presumption and Defeats Class Certification.

Plaintiffs sought certification of a class alleging Rule 10b-5 securities fraud claims. Reliance is an element of a Rule 10b-5 cause of action. Basic Inc. v. Levinson, 485 U.S. 224, 243, 108 S.Ct. 978, 989 (1988). Plaintiffs must successfully assert a theory of *classwide* reliance; without it; individual issues of reliance predominate, and class certification must be denied. See id., 485 U.S. at 242, 108 S.Ct. at 989.

In Basic, the Supreme Court held that plaintiffs providing evidence of certain elements could invoke a "rebuttable presumption" of classwide reliance known as the "fraud-on-the-market" presumption. Halliburton II, 134 S. Ct. at 2408. This presumption is based on the idea that "the market price of shares traded on well-developed markets reflects all publicly available information, and hence, any material misrepresentations." Basic, 485 U.S. at 246, 108 S. Ct. at 991. The

Eleventh Circuit called this rebuttable presumption the "Basic presumption." Local 703, I.B. of T. Grocery & Food Employees Welfare Fund v. Regions Fin. Corp., 762 F.3d 1248, 1261 (11th Cir. 2014).

Basic made it very clear that the fraud-on-the-market presumption could be *rebutted* by a defendant showing evidence "that severs the link between the alleged misrepresentation and . . . the price . . . paid[] by the plaintiff. . . ." 485 U.S. at 248, 108 S. Ct. at 992. Evidence that a misrepresentation did not affect the stock price is considered evidence of no "price impact." Erica P. John Fund, Inc. v. Halliburton Co., 131 S. Ct. 2179, 2187 (2011) ("Halliburton I"). Evidence of no "price impact" thus "severs the link between the alleged misrepresentation" and the price paid by the plaintiff, and defeats class certification. Basic, 485 U.S. at 248, 108 S. Ct. at 992; Halliburton II, 134 S. Ct. at 2414. As set forth below, pp. 5-8, infra, Defendants presented such evidence proving no price impact.

This Court granted class certification in this case on June 14, 2012. (D.E. 151) (the "2012 Order"). This Court concluded that Plaintiffs had successfully invoked the fraud-on-the-market presumption of classwide reliance. Without the benefit of Halliburton II, this Court refused to consider whether Defendants' evidence of "no price impact" rebutted the presumption, holding instead that such evidence was "in the realm of 'loss causation' and reserved for a trial on the merits." Id. at 39. Regions appealed that decision to the Eleventh Circuit.

In the interim, the United States Supreme Court decided Halliburton II. Halliburton II specifically holds that defendants should be "allowed to defeat the presumption at the class certification stage through evidence that the misrepresentation did not in fact affect the stock price." 134 S. Ct. at 2414 (emphasis added).

In the case at hand, the Eleventh Circuit affirmed this Court's "determination that the plaintiffs justified application of the Basic presumption." Local 703, 762 F.3d at 1258. In other words, it affirmed this Court's decision that Plaintiffs successfully *invoked* the presumption. But the Eleventh Circuit recognized that under Halliburton II, defendants may introduce price impact evidence "to rebut the Basic presumption once it has been established." Id. (citing Halliburton II, 134 S. Ct. at 2414-16). It also stated: "Regions presented evidence that its stock price did not change in the wake of any of the alleged misrepresentations." Id. The Eleventh Circuit further noted that this Court, "relying on the state of the law before Halliburton II, did not fully consider this evidence." Id. The Eleventh Circuit thus vacated the class certification decision in part, and remanded to this Court so that this Court can "undertake that review." Id. at 1259. It directs this Court "to reconsider in light of Halliburton II whether Regions rebutted the Basic presumption. . . ." Id. at 1261. Thus, before entering any class certification order in this case, this Court must first determine whether

Defendants' evidence of "no price impact" successfully rebutted the fraud-on-the-market presumption.

## II. *Even if* the Alleged Misrepresentations Were Confirmatory, Regions' Evidence of No "Price Impact" on Both the Alleged Misrepresentation Dates and the Corrective Disclosure Dates Successfully Rebuts the Fraud-on-the-Market Presumption and Defeats Class Certification.

In Halliburton II, the Supreme Court specifically recognized the use of an "event study" by a defendant to prove "no price impact." 134 S. Ct. at 2415. "An event study . . . is a statistical regression analysis that examines the effect of an event [such as the release of information] on . . . a corporation's stock price." FindWhat Investor Group v. FindWhat.com, 658 F. 3d 1282, 1313 (11th Cir. 2011) (citation omitted). Thus, as the Eleventh Circuit has recognized, event studies "determine retrospectively the cause of a stock price movement." Id. at 1313 n.31. Event studies estimate a "predicted return," based on the company's "average return during a control period as well as on market and industry factors." Id. (emphasis added). If the actual stock price moves differently than the predicted return, the analyst determines whether such an "abnormal return" is the result of chance or "instead statistically attributable to the information release." Id.

Defendants presented an event study showing the alleged misrepresentations did not cause a statistically significant price increase on any of the thirteen alleged misrepresentation days. (D.E. 102-1, James Report, Ex. A ¶¶67-73 & Ex. 10). The Eleventh Circuit recognized that this evidence was "evidence that [Regions]

stock price did not change in the wake of any of the alleged misrepresentations." Local 703, 762 F.3d at 1258. Plaintiffs, however, have alleged in their briefing (but not in their Complaint) a "confirmatory information" theory, arguing that Regions' alleged misrepresentations merely confirmed investors' existing expectations, and thus there would not be price impact on alleged misrepresentation dates. See FindWhat, 658 F. 3d at 1310 ("confirmatory information . . . will not cause a change in the stock price.").

But under a "confirmatory information" theory, while there will not be a change in stock price on the date the "confirmatory information" is released, there would be a change in the stock price on the date of the corrective disclosure. Id. ("If and when the misinformation is finally corrected by the release of truthful information (often called a 'corrective disclosure'), the market will recalibrate the stock price to account for the change in information"). Thus, evidence that an alleged corrective disclosure had no price impact successfully rebuts the fraud-on-the-market presumption. Halliburton II, 134 S. Ct. at 2414 (evidence that the correction of an alleged misrepresentation "did not affect the market price of the defendant's stock" successfully rebuts the fraud-on-the-market presumption). This Court recognized this in the 2012 Order: "[T]he failure of a corrective disclosure to affect the market price may serve as a rebuttal to the presumption of reliance." (D.E. 151, at 31).

Plaintiffs argued two corrective disclosure dates with their motion for class certification (October 21, 2008 and January 20, 2009). (D.E. 95, Plaintiffs' Brief in Support of Class Certification at 21-22). Defendants' event study specifically shows that the alleged October 21, 2008 and January 20, 2009 "corrective disclosures" did not have a statistically significant impact on Regions' stock price. (D.E. 102-1, James Report, Ex. A ¶¶48-61 & Exs. 8, 9, and 11). In fact, Regions' stock price *increased* following the October 21, 2008 announcement, (D.E. 102-1, James Report, Ex. A ¶ 54), which is likely why Plaintiffs only argued the January 20, 2009 "corrective disclosure" in their Eleventh Circuit briefing. Local 703, Brief of Plaintiffs-Appellees, 2012 WL 5457597, at 12, 44-45.

As to the January 20, 2009 disclosure date, Plaintiffs argued a raw price drop happened on this day. (D.E. 95, Plaintiffs' Brief in Support of Class Certification at 21). But that raw price drop did not account for market and industry factors. Plaintiffs did no event study to account for such factors. The Eleventh Circuit has at least twice recognized the use of event studies, and their accounting for "market and industry factors" to determine whether a raw price drop is "statistically attributable" to the information release. FindWhat, 658 F. 3d at 1312 and n.31; Hubbard v. BankAtlantic Bancorp., Inc., 688 F. 3d 713, 721, n.18 (11th Cir. 2012) (noting that event studies use a market model "to determine the component of the stock return that would be expected based on the return of the overall market and

industry”).

Defendants’ event study accounts for such market and industry factors, and conclusively finds no price impact on January 20, 2009. On January 20, 2009, U.S. financial stocks across the board “match[ed] their biggest percentage decline ever” “as investors panicked at the likelihood that there is no end in sight for the sector’s need for capital, and no easy way to raise it.” (D.E. 102-1, James Report, Ex. A ¶ 62) (citations omitted). The only event study conducted by anyone in this case concluded:

> [E]vent study results show that Regions’ residual stock price return on this day was not statistically significant. On January 20, 2009, Regions’ stock price declined 24.22 percent. On the same day, the NYSE index declined 6.11 percent and the Industry Index declined 18.61 percent. Once the market and industry effects are controlled for, the residual decline in Regions’ stock price on January 20, 2009 was 1.53 percent, which is not statistically significant.

(Id. at ¶ 56.)

Defendants thus have rebutted the fraud-on-the-market presumption with evidence that “the asserted misrepresentation (or its correction) did not affect the market price of the defendant’s stock.” Halliburton II, 134 S. Ct. at 2414 (emphasis supplied). Plaintiffs did not offer any event study of their own to contest Dr. James’s conclusions. Class certification should be denied.[1]

---

[1] The post-Halliburton II decisions that have held a defendant did not meet its burden of rebutting the Basic presumption with no price impact evidence are easily distinguishable. In none of those cases did the defendants offer evidence that once the market and industry effects were controlled

## III. Halliburton II Clarifies that Evidence of No Price Impact of the Alleged Corrective Disclosures is Not Impermissible "Loss Causation" Evidence.

Plaintiffs argued to this Court that "no price impact" evidence as to the date of the corrective disclosure is impermissible "loss causation" evidence that should not be considered at the class certification stage. (D.E. 107, Plaintiffs' Reply Brief for Class Certification at 37-38). This Court, without the benefit of Halliburton II as guidance, accepted Plaintiffs' argument, and ruled that Defendants' arguments that the "market price never reflected the misrepresentations" "is in the realm of 'loss causation' and reserved for a trial on the merits." (D.E. 151, 2012 Order at 39). Halliburton II rejected this very argument. Halliburton II specifically held that evidence that the "correction" of an alleged misrepresentation "did not affect the market price of the defendant's stock" will also rebut the fraud-on-the-market presumption, Halliburton II, 134 S. Ct. at 1414, and that such determination must be made prior to class certification. Id. at 2414.

Further, the plaintiff in Halliburton II also argued that such evidence (of no price impact on the dates of the corrective disclosures) was impermissible "loss

---

for, there was no statistically significant impact of the alleged corrective disclosures on the stock price. See e.g., In IBEW Local 98 Pension Fund v. Best Buy Co., Inc., 2014 WL 4746195 (D. Minn. 2014) (holding Best Buy did not offer evidence that the alleged misrepresentation's correction "did not affect the market price of the defendant's stock." Halliburton II, 134 S. Ct. at 2414); McIntire v. China MediaExpress Holdings, Inc., 2014 WL 4049896, at *13-14 (S.D.N.Y. 2014); Aranaz v. Catalyst Pharmaceutical Partners, Inc., 2014 WL 4814352, at *9-13 (S.D. Fla. 2014). Best Buy has filed a Rule 23(f) petition to appeal the class certification ruling, which the Eighth Circuit has now granted. IBEW Local 98 Pension Fund, et al. v. Best Buy Co., Inc., No. 14-8020 (8th Cir. September 24, 2014) (order granting petition for 23(f) appeal).

causation" evidence,[2] and indeed, convinced the Fifth Circuit to so hold. Erica P. John Fund, Inc. v. Halliburton Co., 718 F. 3d 423, 434 (5th Cir. 2013), rev'd, Halliburton II, 134 S. Ct. at 2414-17. The Supreme Court, however, reversed, and specifically held that Halliburton should have been given the opportunity to rebut the fraud-on-the-market presumption with evidence of no price impact on the date of the corrective disclosure, even though it was the same "evidence [Halliburton] had earlier introduced to disprove loss causation." Halliburton II, 134 S. Ct. at 2406, 2414, 2417. Under Halliburton II, Defendants' evidence that there was no price impact on the alleged corrective disclosure dates must be considered at the class certification stage, and successfully defeats class certification. Class certification in this case must be denied.

## IV. Any Consideration of Plaintiff's Expert's Opinions Requires a Daubert Analysis and Hearing.

Plaintiffs in this case offered the report of Bjorn Steinholt to challenge Regions' event study. Steinholt's opinions, which are not even based on an event study, do nothing to alter the conclusion that Regions has presented sufficient evidence of no price impact because they: (1) are not based on sufficient facts or data; (2) are not the product of reliable principles and methods; and (3) are not reached by reliably applying principles and methods to the facts of this case. If this Court does consider Steinholt's opinions in reviewing the price impact issue,

[2] Halliburton II, Respondents' Brief, 2014 WL 356636, at *52.

this Court should perform an analysis and hold a hearing pursuant to Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S. Ct. 2786 (1993); Sher v. Raytheon Co., 419 Fed. Appx. 887, 890 (2011) (holding that when an expert's report is critical to class certification, a district court must perform a full *Daubert* analysis in order to conclusively rule on any challenge to the expert's submissions prior to certifying a class) (citation omitted); cf. Local 703, 762 F.3d at 1258 n.7 (citing Am. Honda Motor Co. v. Allen, 600 F. 3d 813, 815-16 (7th Cir. 2010) ("We hold that when an expert's report or testimony is critical to class certification, . . . the district court must perform a full Daubert analysis before certifying the class")).

**V. Plaintiffs have not produced a workable damages model required under *Comcast v. Behrend.***

While this case was on appeal, the Supreme Court determined that in order for plaintiffs to meet their burden under Rule 23(b)(3), they must present a classwide damages model that measures only damages that are "the result of the wrong." Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1434 (2013) ("Comcast"); *see also* Bussey v. Macon Cnty. Greyhound Park, Inc., 562 F. App'x 782, 790-91 (11th Cir. 2014) ("Bussey") (reversing class certification order on the grounds the district court abused its discretion by failing to conduct a rigorous analysis of plaintiffs' damages model). This Court thus had no opportunity to decide this issue. The Eleventh Circuit recognized that this Court had not yet been given that

opportunity, and refused to rule on it without Defendants first raising it to this Court. Local 703, 762 F. 3d at 1253 n. 1.

As explained in Defendants' Notice of Supplemental Authority filed on September 29, 2014 (D.E. 252)[3], Plaintiffs have not satisfied their affirmative duty under Comcast to submit a damages model that tracks their liability at the class certification stage. In fact, Plaintiffs have not provided *any* scientific or academically sound empirical analysis that translates their theories of liability into a damages model. Accordingly, just as in Comcast and Bussey, no damages model, no predominance, no class certification.

## CONCLUSION

Defendants have successfully rebutted the fraud-on-the-market presumption by offering event study evidence conclusively determining that the alleged misrepresentations had no impact on Regions' stock price. Even if the alleged misrepresentations were confirmatory, Defendants have presented event study evidence conclusively determining that such representations had no impact on Regions' stock price because the alleged corrective disclosures had no impact on Regions' stock price. Because Defendants have presented evidence that "the asserted misrepresentation (or its correction) did not affect the market price of the defendant's stock," class certification must be denied. Halliburton II, 134 S. Ct. at

[3] Defendants incorporate the Notice of Supplemental Authority as if set forth fully herein.

2414. Plaintiffs have also failed to meet their burden under Rule 23(b)(3) to produce a damages model and tie it to their theory of liability. Defendants respectfully request this Court to withdraw its prior orders certifying a class in this case, and to deny class certification.

                                        s/Maibeth J. Porter
                                        MAIBETH J. PORTER
                                        JOHN N. BOLUS

                                        Attorneys for Defendant
                                        Regions Financial Corporation.

OF COUNSEL:

MAYNARD, COOPER & GALE, P.C.
Attorneys at Law
1901 Sixth Avenue, North
Suite 2400 Regions/Harbert Plaza
Birmingham, Alabama  35203
Telephone:  (205) 254-1000
Telecopier:  (205) 254-1999

                                                        s/Julian D. Butler
JULIAN D. BUTLER

Attorney for Defendants
C. Dowd Ritter, Irene M. Esteves,
and Alton E. Yother.

OF COUNSEL:

SIROTE & PERMUTT
Attorneys at Law
P. O. Box 18248
Huntsville, Alabama 35804
Telephone: (256) 536-1711
Telecopier: (256) 518-3681

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing document through the Court's electronic filing system, on this the 8th day of October, 2014:

Mr. Andrew J. Brown
Mr. Matthew I. Alpert
ROBBINS, GELLER, RUDMAN, & DOWD, LLP
655 West Broadway, Suite 1900
San Diego, California 92101-3301
E-mail: AndrewB@rgrdlaw.com
malpert@rgrdlaw.com

Mr. James S. Ward
Mr. Patrick C. Cooper
WARD & WILSON, LLC
2100 Southbridge Parkway, Suite 580
Birmingham, Alabama 35209
E-mail: jward@wardwilsonlaw.com
patrickccooper@yahoo.com

Mr. Roger H. Bedford, Jr.
ROGER BEDFORD & ASSOCIATES, P.C.
P.O. Box 370
303 North Jackson Avenue
Russellville, Alabama 35653
E-mail: senbedford@aol.com

Mr. Larry Moore
MOORE & TROUSDALE P.C.
211 North Court Street
P.O. Box 9
Florence, Alabama 35631
E-mail: mtfedcase@mtattys.com

s/ Maibeth J. Porter
OF COUNSEL